UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LINCOLN LERNER, an individual, | |
| Plaintiff, | Case No. 13-cv-3525 |
| v. | |
| DR. GRAPHX II, INC., an Illinois corporation, | Amount of Claim: $13,420 plus such further relief which may be imposed on or before the date of judgment. |
| and | |
| MORGAN STANELY SMITH BARNEY, LLC., a Delaware Limited Liability Company, | |
| Defendant. | |

## SECOND AMENDED COMPLAINT

NOW COMES the Plaintiff, Lincoln (Tony) Lerner, an individual, by and through his attorneys, Riordan, Fulkerson, Hupert & Coleman, and for his Second Amended Complaint against Defendants, Dr. Graphx II, Inc., an Illinois corporation, and Morgan Stanley Smith Barney, LLC., a Delaware limited liability company, states as follows:

### Jurisdiction and Venue

1. This cause of action arises under the Employee Retirement Income Security Act of 1974, as amended ("ERISA").

2. This Court has original jurisdiction over this action pursuant to ERISA §502(e)(1), 29 U.S.C. §1132(e)(1).

3. Venue of this action lies in the Northern District of Illinois, Eastern Division, pursuant to ERISA §502(e)(2), 29 U.S.C. §1132(e)(2), as, among other things, it is believed that the Plan was administered in Cook County Illinois.

## Parties

4. Lincoln (Tony) Lerner ("Lerner" or "Plaintiff") is an individual who resides in Cook County, Illinois, and who was employed at Dr. Graphx II, Inc. beginning on or about 2006 until sometime in late 2012 or early 2013.

5. Dr. Graphx II, Inc. ("Dr. Graphx") is an Illinois corporation. It is a full service graphic art and production services company, which does business at 955 W Lake St, Chicago, IL 60607.

6. Morgan Stanley Smith Barney, LLC ("Morgan Stanley") is a Delaware limited liability company, duly authorized to transact business in the state of Illinois, and which does business in Cook County, Illinois.

## Procedural History

7. On May 10, 2013, Plaintiff filed a complaint against Defendants Dr. Graphx and Morgan Stanley Investment Management, Inc. for failure to produce plan documents pursuant to ERISA §502(c)(1)(B).

8. On August 9, 2013, Plaintiff filed his First Amended Complaint which substituted Morgan Stanley Smith Barney, LLC for the originally named defendant, Morgan Stanley Investment Management, Inc.

9. At the initial status hearing of August 29, 2013, acting on a suggestion orally made by Dr. Graphx's counsel, the Court granted Plaintiff leave to file a Second Amended Complaint. The first three counts of Plaintiff's Second Amended Complaint are substantially identical to the original complaint, except that they include events which occurred after the original complaint

was filed. Plaintiff's Second Amended Complaint also alleges two additional counts, both of which were discussed at the status hearing.

## Background Facts

10. In the last half of 2012, Lerner heard other employees speak of a "pension" plan set up by Dr. Graphx.

11. Prior to that occurrence in 2012, Lerner had not been aware of the existence of any such plan.

12. When Lerner inquired further about the apparent plan, he was met with evasive answers, silence, and what he perceived to be threats about his employment if he continued to ask questions about any pension plan.

13. On or about January 8, 2013, Lerner, through counsel, sent a letter to Dr. Graphx requesting documents related to the apparent Pension Plan pursuant to ERISA §104, 29 U.S.C. §102, because Lerner believed Dr. Graphx was the Plan Administrator. A photocopy of Lerner's counsel's letter, dated January 8, 2013, is attached hereto as **Exhibit A**, and is hereby made part of this Complaint by reference.

14. On or about January 11, 2013, Dr. Graphx received Lerner's letter requesting Plan documents via Certified Mail. A photocopy of the USPS Track & Confirm receipt is attached hereto as **Exhibit B,** and is hereby made part of this Complaint by reference.

15. Between January 11, 2013 and January 22, 2013, Lerner's counsel received a telephone call from Kevin M. O'Donnell, Esq. ("O'Donnell"). O'Donnell represented to Lerner's counsel, amongst other things,

      a.  that he was counsel for Dr. Graphx,

      b.  that Lerner had been a problem employee, and had not been showing up recently,

    c. that there was a "simple matching retirement plan," and that Lerner was not a participant as he had made no contributions, and

    d. that O'Donnell had forwarded the January 8th letter to "the trustee" to obtain the documents.

16. During the phone conversation, counsel for Lerner indicated that he still would need to see various documents concerning the retirement plan, and that there was a time limit in ERISA for the administrator to provide the required documents.

17. On or about January 22, 2013, O'Donnell confirmed to Lerner's counsel, by letter, that the corporation did have a plan and that they "had a call into" the corporation's pension representative to obtain information related to the Plan. A photocopy of O'Donnell's letter, dated January 22, 2013, is attached hereto as **Exhibit C**, and is hereby made part of this Complaint by reference.

18. On or about February 7, 2013, Lerner's counsel sent O'Donnell a letter stating that O'Donnell should "consider [himself] nagged about sending [Plaintiff] the requested documents." A photocopy of Lerner's counsel's letter, dated February 7, 2013, is attached hereto as **Exhibit D**, and is hereby made part of this Complaint by reference.

19. On or about February 14, 2013, O'Donnell sent Lerner a COBRA notice; said letter did not respond to, or even mention, Lerner's previous requests for Plan documents. A photocopy of O'Donnell's letter, dated February 14, 2013, is attached hereto as **Exhibit E**, and is hereby made part of this Complaint by reference.

20. On or about February 18, 2013, Lerner's counsel again wrote O'Donnell reminding him of Lerner's previous requests for Plan documents, which O'Donnell had indicated he would send

4

to him. A photocopy of Lerner's counsel's letter, dated February 18, 2013, is attached hereto as **Exhibit F**, and is hereby made part of this Complaint by reference.

21. On or about February 26, 2013, O'Donnell sent Lerner a letter rescinding Dr. Graphx's initial offer for COBRA coverage and making no reference to Lerner's requests for Plan documents. A photocopy of O'Donnell's letter, dated February 26, 2013, is attached hereto as **Exhibit G**, and is hereby made part of this Complaint by reference.

22. On February 28, 2013, Lerner, through his counsel, wrote O'Donnell via email stating, amongst other things, that counsel had requested Plan documents in several previous communications, that Dr. Graphx had failed to provide these documents as it had previously indicated it would, and that Lerner was again renewing his request for Plan documents. A photocopy of Lerner's counsel's email, dated February 28, 2013, is attached hereto as **Exhibit H**, and is hereby made part of this Complaint by reference.

23. On February 28, 2013, O'Donnell emailed Lerner's attorney regarding the COBRA notice but "without responding to any of [Lerner's counsel's] email's contents." A photocopy of O'Donnell's email, dated March 1, 2013, is attached hereto as **Exhibit I**, and is hereby made part of this Complaint by reference.

24. During March 4-8, 2013, Lerner and Lerner's counsel continued to ask for Plan documents as well as for information related to Lerner's COBRA coverage, but were met with hostility. A photocopy of the email chain between Lerner's counsel and O'Donnell is attached hereto as **Exhibit J**, and is hereby made part of this Complaint by reference.

25. In a March 8, 2013 email, O'Donnell responded to Lerner's counsel's email renewing his request for Plan documents, and stated:

5

"I have know [*sic*] Mr. Mages for one very long time and he is veritable prince of a person. He could not have more patient or indulgent with Tony. Keep scorching him for his past good will and teach him to never give the rest of the world a break or a 1,000 breaks as he did Tony. Please, for the most part, go away because you are wasting everyone's time and money. There are real grievances to pursue in this life. You would be hard pressed to find a person or cause less worthy of this time and efforts."

26. At no point in any of his communications with Lerner's counsel, did O'Donnell claim that Lerner was not an employee of Dr. Graphx through at least the end of 2012 or even until January 31, 2013.

27. On or about March 12, 2013, sixty-three (63) days after Lerner's initial request for plan documents, "Morgan Stanley" is mentioned by O'Donnell, presumably as trustee of some sort or plan administrator, but Lerner's counsel was not given any contact or other information and was informed that Morgan Stanley had refused to produce the requested documents without a subpoena. A photocopy of the letter from O'Donnell's office, dated March 12, 2013, is attached hereto as **Exhibit K**, and is hereby made part of this Complaint by reference.

28. On April 16, 2013, Lerner's counsel wrote O'Donnell stating, amongst other things, that there should be no reason "why Dr. Graphx should have to subpoena documents concerning its own employee benefits plan," and that a subpoena was inappropriate because no pending legal action existed. A photocopy of Lerner's counsel's email to O'Donnell, dated April 16, 2013, is attached hereto as **Exhibit L**, and is hereby made part of this Complaint by reference.

29. In the aforesaid April 16th letter to O'Donnell, Lerner's counsel again renewed Lerner's request for any and all Plan documents and stated:

6

"If Dr. Graphx II believes that Morgan Stanley or some other party has information responsive to our request, please send us that party's contact information and whatever plan identification we need to contact them directly. However, doing so is not intended to waive or release your client from any legal duty it has to produce these documents."

30. On April 24, 2013, one hundred and six (106) days after Lerner's initial request for plan documents, O'Donnell wrote Lerner's counsel in regards to COBRA premiums, but said letter did not respond to Lerner's counsel's April 16th email or address Lerner's numerous requests for Plan documents. A photocopy of O'Donnell's letter to Lerner's counsel, dated April 24, 2013, is attached hereto as **Exhibit M**, and is hereby made part of this Complaint by reference.

31. On June 5, 2013, O'Donnell sent a copy of the Morgan Stanley enrollment kit for the Simple IRA plan that Dr. Graphx offers its employees. A photocopy of Morgan Stanley's Simple IRA enrollment kit is attached hereto as **Exhibit N**, and is hereby made part of this Complaint by reference.

32. On June 6, 2013, counsel for Morgan Stanley sent copies of Dr. Graphx 2006 Plan Summary and Adoption Agreement to counsel for counsel for Lerner. A photocopy the 2006 Plan Summary and the 2006 Plan Adoption Agreement is attached hereto as **Exhibit O** and **Exhibit P** (respectively), and is hereby made part of this Complaint by reference.

33. The documents, sent to Lerner's counsel on June 5 and June 6, are not complete.

34. Some do not fully comply with the requirements of ERISA §104, 29 U.S.C. §102.

35. On July 26, 2013, counsel for Lerner emailed O'Donnell informing him, amongst other things, that the documents produced thus far were insufficient in his view.

36. Specifically, the documents produced thus far do not inform Lerner of Dr. Graphx's annual election to either make mandatory or matching employer contributions during each relevant plan year. A photocopy of Lerner's Counsel's July 26, 2013 email to O'Donnell is attached hereto as **Exhibit Q**, and is hereby made part of this Complaint by reference.

37. On August 7, 2013, counsel for Lerner again informed Defendants that the documents produced thus far did not adequately assist Lerner in his efforts in determining his rights under the Dr. Graphx's IRA plan and also renewed his request for additional documents under ERISA §104. Photocopies of Lerner's Counsel's letters to counsels for both Defendants is attached hereto as **Exhibit R**, and is hereby made part of this Complaint by reference.

38. On September 5, 2013, counsel for Dr. Graphx produced copies of Dr. Graphx's 2001 Plan Summary and Adoption Agreement to counsel for counsel for Lerner. Again, these documents failed to indicate what form of employer contributions Dr. Graphx had elected. A photocopy of Dr. Graphx's 2001 Plan Summary and the 2001 Plan Adoption Agreement is attached hereto as **Exhibit S**, and is hereby made part of this Complaint by reference.

39. As of the date of filing this Amended Complaint, counsel for Lerner has asked on numerous occasions, via telephone and letter, for any and all documents which, at the very least, reflect Dr. Graphx annual election to either make mandatory or matching contributions and neither Defendant has yet complied with this request.

### COUNT I
### DR. GRAPHX'S FAILURE TO COMPLY WITH
### DOCUMENT REQUEST PURSUANT TO ERISA §104(B)(4)

40. Plaintiff incorporates by reference and re-alleges the allegations in Paragraphs 1 through 28 as though fully stated herein.

41. On information and belief, Dr. Graphx is the Plan Administrator.

42. Pursuant to ERISA §104(b)(4), 29 U.S.C. §102(b)(4), Dr. Graphx was required to furnish a copy of certain Plan documents to Lerner on February 11, 2013, 30 days after receipt of Lerner's request.

43. Dr. Graphx did not provide any Plan documents whatsoever to Lerner before suit was filed, and has not sent Lerner the documents requested pursuant to ERISA, despite numerous requests.

44. Pursuant to ERISA §502(c)(1)(B), 29 U.S.C. §1132(c)(1)(B): "Any administrator… who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary (unless such failure or refusal results from matters reasonably beyond the control of the administrator) by mailing the material requested to the last known address of the requesting participant or beneficiary within 30 days after such request may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $110 a day from the date of such failure or refusal."

45. Thus Dr. Graphx has been and continues to be in violation of ERISA §104, 29 U.S.C. §102 since approximately February 11, 2013.

WHEREFORE, Plaintiff, Lincoln (Tony) Lerner, prays that the Court:

   a. compel Defendant Dr. Graphx II, Inc. to produce the required Plan documents pursuant to ERISA §104, 29 U.S.C. §102; and

   b. enter judgment in its favor and against Defendant, Dr. Graphx II, Inc., as Plan administrator, in the amount of $110 per day from February 11, 2013 until the required documents are produced for failure to produce documents, plus interest, attorneys' fees and costs, and any such further relief that the Court deems just and equitable.

## COUNT II
## DR. GRAPHX'S BREACH OF FIDUCIARY
## DUTY PURSUANT TO ERISA §404

46. Plaintiff incorporates by reference and re-alleges the allegations in Paragraphs 1 through 28 as though fully stated herein.

47. If Dr. Graphx was not the Plan Administrator, Dr. Graphx failed to properly notify the Plan Administrator of Lerner's request for Plan documents.

48. As of the date of the initial complaint, Dr. Graphx refused to tell Lerner anything related to the Plan, except that "a simple Plan" exists, or who the Plan Administrator is so that Lerner could contact that Administrator directly.

49. Dr. Graphx did not provide any Plan documents to Lerner as of the date and time of the initial Complaint, despite numerous requests.

50. Dr. Graphx, as the employer, owes Lerner, the employee, the duty to provide such information as is reasonably necessary to enable him to enforce his rights.

WHEREFORE, Plaintiff, Lincoln (Tony) Lerner, prays that the Court:

a. compel Defendant Dr. Graphx II, Inc. to produce the required Plan documents; and

b. enter judgment in its favor and against Defendant, Dr. Graphx II, Inc., as Plan administrator, in the amount of $110 per day for failure to produce documents, plus interest, attorneys' fees and costs, and any such further relief that the Court deems just and equitable.

## COUNT III
## MORGAN STANLEY'S FAILURE TO COMPLY WITH
## DOCUMENT REQUEST PURSUANT TO ERISA §104(B)(4)

51. Plaintiff incorporates by reference and re-alleges the allegations in Paragraphs 1 through 28 as though fully stated herein.

52. In the alternative, if Morgan Stanley was the Plan Administrator, it was required to furnish a copy of Plan documents to Lerner, 30 days after receipt of Lerner's request pursuant to ERISA §104(b)(4), 29 U.S.C. §102(b)(4).

53. On information and belief, Dr. Graphx informed Morgan Stanley of Lerner's request on or about January 22, 2013, when Dr. Graphx informed Lerner that it had called the corporation's pension representative to gather information related to the Plan. *See* **Exhibit C**.

54. Morgan Stanley was required to furnish the requested documents to Lerner on or before February 21, 2013, pursuant to ERISA §104(b)(4), 29 U.S.C. §102(b)(4).

55. Morgan Stanley did not provide any Plan documents to Lerner prior to the filing of the initial Complaint, and according to O'Donnell's office, refused to do so without a subpoena even though no action had been filed at that time which might permit the use of a subpoena.

56. Pursuant to ERISA §502(c)(1)(B), 29 U.S.C. §1132(c)(1)(B): "Any administrator… who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary (unless such failure or refusal results from matters reasonably beyond the control of the administrator) by mailing the material requested to the last known address of the requesting participant or beneficiary within 30 days after such request may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $110 a day from the date of such failure or refusal."

WHEREFORE, Plaintiff, Lincoln (Tony) Lerner, prays that the Court:

a. compel Defendant, Morgan Stanley Smith Barney, LLC., to produce Plan documents pursuant to ERISA § 104, 29 U.S.C. § 102; and

b. enter judgment in its favor and against Defendant Morgan Stanley Smith Barney, LLC., as Plan administrator, in the amount of $110 per day for failure to produce

documents, plus interest, attorneys' fees and costs, and any such further relief that the Court deems just and equitable.

## COUNT IV
## RETALIATORY DISCHARGE PURSUANT TO ERISA §510

57. Plaintiff incorporates by reference and re-alleges the allegations in Paragraphs 1 through 28 as though fully stated herein.

58. On information and belief Dr. Graphx excluded Lerner from its employee retirement plan, and but for that exclusion, Lerner's claim to said benefits would have vested.

59. On January 8, 2013, Lerner requested Plan documents from Dr. Graphx pursuant to ERISA §104(b)(4).

60. On or about mid-January or early February, Dr. Graphx discharged Lerner.

61. Dr. Graphx discharged Lerner as retaliation for his continued questions concerning a possible plan and to prevent Lerner from receiving the Plan documents he requested which he was entitled to under ERISA.

WHEREFORE, Plaintiff, Lincoln (Tony) Lerner, prays that the Court award Plaintiff back pay, plus interest from the date of Plaintiff's discharge, attorney's fees and costs, and any such further relief that the Court deems just and equitable.

## COUNT V
## DENIAL OF BENEFITS PURSUANT TO ERISA §502(A)(1)

62. Plaintiff incorporates by reference and re-alleges the allegations in Paragraphs 1 through 6 as though fully stated herein.

63. Dr. Graphx offers a Simple IRA Plan for its employees.

64. Dr. Graphx never informed Lerner of said Plan and Lerner was unaware that such a Plan existed until late 2012.

65. Per Dr. Graphx's Simple IRA Plan Summary, a participant "means any employee who has met the eligibility requirements of Section 3.01 of the Plan and Section 3 of the Adoption Agreement, may enroll as a Contribution participant and is or may become eligible to receive an Employer Contribution." *See Exhibit O*.

66. Section 3.01 of the Plan reads:

> "ELIGIBILITY REQUIREMENTS Except for those Employees described in Section 3.02 of the Plan who are excluded as indicated in the Adoption Agreement, each Employee of the Employer who fulfills the eligibility requirements specified in the Adoption Agreement *shall* become a Participant."
>
> *Id. (emphasis added)*

67. Section 3.02 of the Plan excludes employees who are a part of a collective bargaining unit, non-resident aliens and acquired employees. *Id*.

68. Lerner is neither a member of a collective bargaining unit, a non-resident alien, nor an acquired employee as defined by the Plan Summary.

69. Pursuant to the Adoption Agreement, eligibility is limited to each Employee who (a) have received at least $5,000 in Compensation during any 2 preceding Years (need not be consecutive; and (b) an Employee who is reasonably expected to receive at least $5,000 in Compensation during the current Year. *See Exhibit P*.

70. As an employee of Dr. Graphx, Lerner's annual compensation in 2006 and every consecutive year thereafter until the date of his termination was at least $5,000.

71. Pursuant to the Plan Summary, an Employer shall make either Matching Contribution or Nonelective Contributions do the SIMPLE IRAs of Participants entitled thereto. *See Section 4.02A of Exhibit O*.

72. A Matching Contribution, means an Employer Contribution made to the simple IRA of *each Contributing Participant* for any year in an amount equal to the amount of the Contributing Participant's Elective Deferral (contributions made by the employer to the plan on behalf of a contributing participant under a salary reduction agreement). *Id*. at *Section 4.02(B) and 4.01(A)*.

73. However, an Employer who elects Nonelective Contributions satisfies this requirement by "making a Nonelective Contribution of two percent of Compensation to the simple IRA of *each Participant* who has at least $5,000 of Compensation...." Id. at *Section 4.02(C)*.

74. "If a participant fails to establish an SIMPLE IRA, the Employer may execute any necessary documents to establish a SIMPLE IRA on behalf of the Participant," in order to comply with the Employer's Contribution election. *Id*. at *Section 3.03(B)*.

75. Pursuant to section 4.04, all Employer Contributions made under the Plan on behalf of Employees shall be fully vested and nonforfeitable at all times. Each Employee shall have an unrestricted right to withdraw at any time all or a portion of the Employer Contributions made on his or her behalf. *Id*. at *Section 4.04*.

76. If Dr. Graphx had an obligation to make Nonelective Employer Contributions, it did not make any such contributions to any simple IRA established on behalf of Lerner.

77. To the extent Dr. Graphx elected to make Matching Employer Contributions, it failed to make any such contributions to any simple IRA established on behalf of Lerner.

    WHEREFORE, Plaintiff, Lincoln (Tony) Lerner, prays that the Court award Plaintiff benefits due him under the terms of the Simple IRA Plan, either matching or mandatory, beginning in 2006 until the year of his discharge, plus interest, attorney's fees and costs, and any such further relief that the Court deems just and equitable.

                                                Respectfully Submitted,
                                                Plaintiff, Lincoln (Tony) Lerner

                                                By:_____/s/ Jeffrey D. Hupert_____
                                                      One of his attorneys

Jeffrey D. Hupert (ARDC No. 3121829)
Temi F. Oduala (ARDC No. 6309820)
Riordan, Fulkerson, Hupert & Coleman
30 North LaSalle Street, Suite 2630
Chicago, Illinois 60602
(312) 346-4740